UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER W. MCVEY,

Plaintiff,

v. Case No: 8:15-cv-829-T-JSS

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_________________________________/

**ORDER**

Plaintiff, Christopher W. McVey, seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision did not employ proper legal standards, the decision is reversed.

**BACKGROUND**

**A. Procedural Background**

Plaintiff filed an application for a period of disability and disability insurance benefits on May 15, 2011, and an application for supplemental security income on September 28, 2011. (Tr. 44.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 44.) Plaintiff then requested an administrative hearing. (Tr. 44.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 44.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 41–55.) Subsequently, Plaintiff requested review from the Appeals Council, which

the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B. Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1966, claimed disability beginning on January 30, 2008. (Tr. 44, 53.) Plaintiff has a high school education. (Tr. 54.) Plaintiff's past relevant work experience included work as a store laborer. (Tr. 53.) Plaintiff alleged disability due to bipolar disorder, obsessive compulsive disorder, neuropathy, learning disorders, panic and anxiety disorder, and posttraumatic stress disorder. (Tr. 50, 236.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 30, 2008, the alleged onset date. (Tr. 46.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, generalized anxiety disorder, posttraumatic stress disorder, panic disorder, obsessive compulsive disorder, alcohol dependence, and neuropathy. (Tr. 46–47.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 48.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform medium work, except he can understand, remember, and carry out instructions and tasks that are simple and consistent with unskilled work and he can have only occasional interaction with the general public and cannot perform work at a fast production rate. (Tr. 49.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could

be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible. (Tr. 50.)

Considering Plaintiff's noted impairments and the assessment by a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work. (Tr. 53.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a laundry laborer, sweep cleaner, and floor waxer. (Tr. 54–55.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 55.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled or not disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to

perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**ANALYSIS**

Plaintiff challenges the ALJ's decision on the basis that the ALJ erred in determining Plaintiff's credibility. Specifically, Plaintiff argues that the ALJ erred by improperly evaluating his credibility based on the following issues: Plaintiff's statement regarding his sobriety, Plaintiff's loss of employment for failure to pass a drug test, Plaintiff's treatment by a nurse practitioner, Plaintiff's examination findings suggesting no significant mental abnormalities, and Plaintiff's failure to comply with medical treatment. For the reasons that follow, reversal is warranted.

In this case, the ALJ stated the following in her decision in applying the pain standard, before discussing the objective medical evidence:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> At the outset, the undersigned notes that the claimant stopped working for reasons unrelated his allegedly disabling impairments. For example, according to the record, the claimant was fired from his last job because he failed a drug test at work (Exhibit 4F). Likewise, at the hearing, the claimant testified that he lost his job after a drug screen revealed prohibited prescription drugs in his system. Thus, one could reasonably argue that the claimant's current unemployment is due to reasons other than his allegedly disabling impairments.
>
> Additionally, the claimant provided inconsistent statements that further undermine his credibility. For example, at the hearing, the claimant testified that he had remained sober for approximately two and half years. Yet, treatment notes from January and March of 2011 state that the claimant had recently started drinking again (Exhibits 4F and 7F). Moreover, the claimant testified to taking his medications as prescribed. Yet, on multiple occasions, the treatment notes report that the claimant often ran out of his medications, which suggests he may have taken more than prescribed (Exhibits 7F and l0F). Although the inconsistent information provided by the claimant may not be the result of a conscious intention

> to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
> While the mental health treatment history supports *some* of the claimant's allegations, it does not support the alleged severity of the claimant's symptoms. For example, the claimant did seek mental health treatment somewhat consistently, which suggests that *some* of his symptoms were genuine. However, the claimant was usually, if not always, treated by a nurse practitioner rather than a psychiatrist or psychologist in 2011 and 2012. Additionally, the treatment consisted mostly of medication management. Moreover, when compliant with the prescribed treatment, the alleged symptoms seemed to improve. For example, in 2012, the claimant reported an improvement in his symptoms and by December of 2012 described himself as "stable on his medications with no side effects" (Exhibit l1F). Likewise, during an office visit in January of 2012, a nurse practitioner, reported that the claimant's symptoms had improved from a psychiatric standpoint (Exhibit 7F). Yet, even though the claimant reported an improvement in his symptoms when he did comply with treatment, there is evidence of noncompliance throughout the record. As discussed above, the treatment notes indicate that the claimant often ran out of medication before his follow-up visits (Exhibits 7F and 10F). Additionally, the claimant did not attend therapy regularly and sometimes failed to follow through on recommendations from his mental health providers. For example, the treating nurse practitioner suggested that the claimant look into attending skill-building programs at Vincent House and gave the claimant a brochure on the program (Exhibit l1F). However, at the hearing, the claimant testified that he did not look into the program or even read the brochure. Given the alleged severity of the claimant's symptoms, one could reasonably expect him to comply with treatment and heed the advice of his mental health providers. Furthermore, despite alleging daily anxiety attacks, there is no record of emergency room visits or hospitalizations due to symptoms associated with an anxiety attack.

(Tr. 50–51.)

In addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). A plaintiff must show: (1) objective medical evidence of an underlying medical condition and either (2) objective medical evidence that substantiates the severity of the pain from

the condition or (3) that the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. *Id.*; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

The ALJ can make credibility determinations regarding a claimant's subjective complaints and must provide specific reasons for the credibility finding. *Holt*, 921 F.2d at 1223. When the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *see also Holt*, 921 F.2d at 1223 ("[T]he ALJ's discretionary power to determine the credibility of testimony is limited by his obligation to place on the record explicit and adequate reasons for rejecting that testimony."). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d. at 1562.

When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3). The credibility determination does not need to cite particular phrases or formulations. However, it cannot merely be a broad rejection that is not enough to enable the reviewing court to conclude that the ALJ considered the medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

**A. Plaintiff's Sobriety**

Plaintiff contends that the ALJ erred by finding him not entirely credible based on his truthful statement regarding his sobriety. At the hearing dated July 15, 2013, Plaintiff testified that he had remained sober for approximately two and a half years. (Tr. 92.) However, the ALJ found

that treatment notes from 2011 indicated otherwise. (Tr. 51.) In her decision, the ALJ stated that Plaintiff "provided inconsistent statements that further undermine his credibility" and referenced Plaintiff's statement about his sobriety as a basis for discrediting his testimony. (Tr. 50.)

As noted by the ALJ, the record reflects some treatment notes throughout 2011 indicating that Plaintiff had started drinking again. (Tr. 303, 350, 353, 359, 368, 398, 404, 405.) Notably, a progress note from December 14, 2011, indicates that Plaintiff relapsed in August 2011 and reported daily drinking for four months. (Tr. 398–399.) If Plaintiff had relapsed in August 2011 as suggested by the treatment notes, then Plaintiff's statement that he had been sober for two and half years prior to the ALJ's hearing is not entirely accurate. As noted by the Commissioner, however, "it is unclear exactly when Plaintiff stopped drinking." (Dkt. 22 at 8.) Further, Plaintiff's statement concerning his sobriety, although somewhat inaccurate, was not a statement about his symptoms or pain resulting from his impairments and, as a result, this minor inaccuracy does not warrant the conclusion that Plaintiff's testimony concerning the severity of his symptoms was unreliable.

As recited above, in evaluating a claimant's "credibility," the ALJ may choose to discredit a claimant's testimony about his or her symptoms. In doing so, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence "*showing how [the claimant's] impairment(s) and any related symptoms affect [his or her] ability to work*." 20 C.F.R. § 404.1529(a) (emphasis added). As such, the ALJ's credibility finding is limited to statements about the claimant's pain and symptoms. *See* 20 C.F.R. § 404.1529(a) ("In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect

you.”). Indeed, the Social Security Administration emphasizes this point in its published ruling, stating:

> Adjudicators must limit their evaluation to the individual’s statements about his or her symptoms and the evidence in the record that is relevant to the individual’s impairments. In evaluating an individual’s symptoms, our adjudicators will not assess an individual’s overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual’s symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual’s symptoms and given the adjudicator’s evaluation of the individual’s symptoms, whether the intensity and persistence of the symptoms limit the individual’s ability to perform work-related activities.

Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016).[1]

Accordingly, the ALJ may not base his or her credibility determination on claimants’ statements that are unrelated to the claimant’s impairment. Here, the ALJ erred in doing so. Upon review of the ALJ’s decision, the ALJ pointed to Plaintiff’s “inconsistent statements” concerning his sobriety when she made determinations as to Plaintiff’s credibility. (Tr. 51.) It is clear, however, that the ALJ’s consideration of Plaintiff’s statement was not part of her consideration of Plaintiff’s alcohol dependence and the effects of his substance abuse on his impairments. Notably, the ALJ did not reference Plaintiff’s alcohol dependence in her credibility assessment when discussing Plaintiff’s sobriety.

The Commissioner has not cited any authority to support the proposition that the ALJ is entitled to base his or her credibility determination on any statement of the claimant rather than only statements relating to the claimant’s impairment. Rather, it is well-established that “[i]f the

[1] Social Security Rulings are agency rulings published under the Commissioner’s authority and are binding on all components of the Social Security Administration. *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990). Although they are not binding, they are accorded deference. *De Olazabal v. Soc. Sec. Admin., Comm’r*, 579 F. App’x 827, 832 (11th Cir. 2014).

ALJ decides not to credit a claimant's testimony *as to her pain*, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (emphasis added). The ALJ failed to do so here. In light of the above, the ALJ erred in discrediting Plaintiff's subjective complaints of pain based on a questionably inaccurate statement unrelated to his impairments or the symptoms resulting from his impairments.

**B. Plaintiff's Loss of Employment**

Plaintiff contends that the ALJ erred by finding him not entirely credible based on his loss of employment for failure to pass a drug test. At the hearing, the ALJ questioned Plaintiff regarding the reasons why he stopped working in 2008. (Tr. 83–84.) In response, Plaintiff stated that he was fired from his previous employment because he failed a drug test. (Tr. 84.) Based on this, the ALJ found that Plaintiff's current unemployment could reasonably be attributed to reasons other than his alleged impairments, suggesting that Plaintiff's drug use could have been a factor in Plaintiff's alleged inability to secure employment. (Tr. 51.) A psychological evaluation of Plaintiff in 2011 also noted the apparent inconsistency between Plaintiff's report that he had not worked for three years because of his anxieties and his statement that he had been working at a warehouse until he was fired for failing a drug test. (Tr. 303.)

In light of Plaintiff's statements that he was precluded from working because of his impairments, the ALJ properly considered his employment history and the extent to which his alleged impairments affected his ability to secure employment. *See* 20 C.F.R. § 404.1529(c)(3) (providing that the ALJ will consider information about the claimant's prior work record in evaluating the extent to which a claimant's symptoms limit his or her capacity for work).

**C. Plaintiff's Medical Sources**

Plaintiff contends that the ALJ erred by finding him less than credible because he was regularly treated by a nurse practitioner instead of a psychiatrist or psychologist. Specifically, Plaintiff argues that the ALJ improperly concluded that he had a choice of treatment when, in fact, he was unable to afford the services of a psychologist or psychiatrist and that the ALJ made an adverse credibility finding based on the source of his medical treatment.

Under the Social Security Regulations, nurse practitioners are not acceptable medical sources. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1). However, the source of a claimant's medical treatment is generally considered only when weighing a medical opinion, as only evidence from "acceptable medical sources" can establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513(a); *see* 20 C.F.R. § 404.1513(d)(1) (providing that evidence from other sources, including nurse practitioners, is considered to show the severity of a claimant's impairment and how the impairment affects the claimant's ability to work). For example, the opinions of nurse practitioners are not considered "medical opinions" and cannot establish the existence of an impairment, although their opinions may be used to show the severity of an impairment and how it affects a claimant's ability to work. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)). Because nurse practitioners are not acceptable medical sources, an ALJ need not give substantial weight to their opinions. *Id.*

In this case, however, the ALJ considered the status of Plaintiff's medical sources in determining Plaintiff's credibility, not in weighing the opinion evidence. Specifically, the ALJ stated that "the claimant was usually, if not always, treated by a nurse practitioner rather than a psychiatrist or psychologist" to show that Plaintiff's symptoms were not as severe as he alleged.

(Tr. 51.) This supposition is unwarranted. Therefore, to the extent that the ALJ discounted Plaintiff's subjective complaints of pain based on the mere fact that he was treated by a nurse practitioner instead of an acceptable medical source, this was error.

**D. Plaintiff's Exam Results**

Plaintiff contends that the ALJ erred by finding him less than credible based on the absence of significant abnormalities in Plaintiff's examination results and by failing to consider Plaintiff's psychological testing results. Specifically, Plaintiff contends that the ALJ failed to consider the significant abnormalities apparent in Dr. Claudia Ressel-Hodan's and Dr. Michael Eastridge's opinions.

In June 2008, Dr. Ressel-Hodan performed a psychological evaluation of Plaintiff to assess his level of overall psychological functioning. (Tr. 298–302.) Dr. Ressel-Hodan's evaluation included a general personality evaluation, a clinical interview, a mental status examination, and various psychological tests. (Tr. 298–302.) After examining Plaintiff, Dr. Ressel-Hodan noted that Plaintiff was well-groomed, cooperative, and sad, but he did not exhibit gross or fine-motor coordination problems, perceptual distortions, or formal thought disorder. (Tr. 300.) Based on his test results, Dr. Ressel-Hodan concluded that Plaintiff is a dually diagnosed individual who suffers from a long history of bipolar mood swings, panic attacks, posttraumatic stress disorder, a social phobia, and a history of alcohol dependence, but found no indications for psychotic symptoms. (Tr. 301.)

In terms of vocational planning, Dr. Ressel-Hodan noted that Plaintiff had functional deficits related to his emotional instability and his recent attempt at abstinence from alcohol, and she recommended that Plaintiff involve himself regularly in Alcoholics Anonymous ("AA"), seek a psychiatric evaluation to help develop a regime of medication to stabilize him emotionally, and

attend individualized substance abuse counseling if the group setting of AA is too overwhelming. (Tr. 301.) Upon review, and as noted by the ALJ, "[m]ost of Dr. Hodan's recommendations involved receiving appropriate substance abuse treatment." (Tr. 47, 301.) Dr. Ressel-Hodan noted that Plaintiff's evaluation results showed functional deficits related to his recent attempt at abstinence from alcohol, and his vocational-related recommendations primarily addressed Plaintiff's substance abuse. (Tr. 301–302.) However, Dr. Ressel-Hodan also noted that Plaintiff's evaluation results showed functional deficits related to his emotional instability, namely his anxiety and depressive symptoms. (Tr. 301.)

Notably, a review of the record reveals similar findings from other medical sources. In March 2011, Dr. Eastridge completed a psychological evaluation report of Plaintiff, which included the results of the Symptom Checklist 90-Revised test that was administered on Plaintiff. (Tr. 303–308.) Dr. Eastridge noted that Plaintiff was clearly depressed and, based on his test results, was suffering from "severe emotional distress in almost all areas," was "extremely fragile," and was "at risk for suicidal behavior and self-mutilation." (Tr. 306.) Based on this, Dr. Eastridge recommended that Plaintiff obtain intensive psychiatric and psychological treatment on a long-term basis and try to maintain sobriety. (Tr. 307.)

In terms of work-related limitations, Dr. Eastridge found that Plaintiff was not a good candidate for training at that time due to his severe emotional distress and continued alcohol consumption, but he recommended that Plaintiff establish and maintain sobriety and stabilize his emotional distress before seeking training or job placement. (Tr. 307.) Dr. Eastridge further found that Plaintiff would have difficulty sustaining focus and attention, even when stable, and would thus require extra time and attention to learn new skills and would require a low-stress workplace with moderate interaction with co-workers and no interaction with the public. (Tr. 307.)

Although Plaintiff's mental status examinations show that, despite his impairments, he exhibited normal exam results (e.g., organized thought process, intact memory and orientation, intact attention and concentration, normal speech, and fair judgment and insight), the record consistently indicates that Plaintiff exhibited depressive symptoms and a history of alcohol dependence. (Tr. 20, 279–281, 284, 287, 288, 291, 296, 300, 321, 323, 326, 328, 329, 332, 342, 351, 370, 376, 380, 381, 383, 386, 388, 406, 412, 416, 417, 419, 420, 422, 424, 429, 432–433, 437, 446.) Indeed, in October 2013, Plaintiff reported worsening symptoms attributed to his anxiety and mental disorders. (Tr. 19.)

Upon review, Plaintiff's testimony regarding the severity of his symptoms is, to some extent, consistent with the record, as his treatment notes reflect the existence of a severe impairment and symptoms resulting from his impairments. As noted above, the medical sources, including Dr. Ressel-Hodan and Dr. Eastridge, and Plaintiff's treatment notes chronicle Plaintiff's reports of depressive symptoms and emotional instability and indicate that such symptoms result from his mental impairments. The ALJ did not articulate sufficient reasons for discounting Plaintiff's testimony and instead relied on several questionable inferences, as noted throughout this opinion, as a basis for discrediting Plaintiff's subjective complaints. Among these improper inferences is the ALJ's conclusion that Plaintiff's testimony regarding the severity of his impairments was unreliable or not fully credible based on statements about his sobriety, his treatment by a nurse practitioner, and his compliance with medical directives without considering his inability to afford certain medical treatment or his substantial compliance with most directives within his financial ability. Further, in light of the evidence corroborating Plaintiff's testimony regarding the existence of an impairment and symptoms related to his mental impairments and

alcohol dependence, the ALJ did not adequately explain how Plaintiff's symptoms affect his ability to work. Accordingly, the ALJ's credibility finding would benefit from additional fact-finding.

**E. Plaintiff's Compliance with Medical Treatment**

**1. Compliance with Medications**

At the hearing, the ALJ questioned Plaintiff about his medications because he provided conflicting statements regarding whether he took his mediations as prescribed. Specifically, when initially questioned, Plaintiff testified that he took all of his medications as prescribed. (Tr. 92.) However, the ALJ referenced treatment notes indicating that Plaintiff had run out of medications, and she questioned Plaintiff regarding his ability to take his medications as scheduled when he no longer had any medications left. (Tr. 98.) Plaintiff responded by testifying that at times he would lapse on his medications and would compensate by taking the missed medication at a different time. (Tr. 98–99.) Plaintiff's response, however, did not address the ALJ's concern regarding the apparent inconsistency in Plaintiff's testimony. (Tr. 98–99.) Based on this, the ALJ found that Plaintiff had not been taking his medications as prescribed, as the evidence suggested that Plaintiff took more medication than prescribed. (Tr. 51.)

A review of the records reflects several instances of non-compliance with medication and drug abuse and thus supports the ALJ's findings. (Tr. 295, 299, 304, 353, 366, 368, 369, 374, 376, 380, 400, 404, 416.) Further, Plaintiff's testimony confirms the ALJ's finding that Plaintiff had not been taking his medications as prescribed. In determining a claimant's credibility, the ALJ is expressly entitled to consider precipitating and aggravating factors of a claimant's symptoms and pain, the effectiveness and side effects of medication, and the claimant's compliance with prescribed treatment. 20 C.F.R. §§ 404.1529(c)(3), 404.1530(b). Here, the ALJ found that Plaintiff's symptoms had improved when compliant with prescribed treatment, as Plaintiff

reported improvement with medications on numerous occasions. (Tr. 17, 19, 21, 48, 51, 281, 288, 292, 326, 333, 372, 374, 376, 389, 408, 410, 412, 429, 437, 446, 449, 451, 473, 475.) However, as discussed below, the ALJ did not properly consider Plaintiff's financial ability to comply with certain medical treatment but instead improperly suggested that Plaintiff disregarded instructions to seek medical treatment.

**2. Compliance with Medical Treatment**

Plaintiff contends that the ALJ erred by finding him not entirely credible based on his failure to continue medical treatment when Plaintiff could not afford to do so. Specifically, in considering Plaintiff's credibility, the ALJ stated the following with regard to Plaintiff's compliance with medical treatment:

> [T]he claimant did not attend therapy regularly and sometimes failed to follow through on recommendations from his mental health providers. For example, the treating nurse practitioner suggested that the claimant look into attending skill-building programs at Vincent House and gave the claimant a brochure on the program (Exhibit 11F). However, at the hearing, the claimant testified that he did not look into the program or even read the brochure. Given the alleged severity of the claimant's symptoms, one could reasonably expect him to comply with treatment and heed the advice of his mental health providers.

(Tr. 51.) The ALJ did not, however, consider whether Plaintiff was able to afford medical treatment or whether Plaintiff's failure to follow prescribed medical treatment resulted from his financial inability to do so.

In making a disability determination, the ALJ may rely on a claimant's refusal to follow prescribed medical treatment, and refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). However, a claimant's poverty can excuse his or her non-compliance with medical treatment. *Id.* Therefore, before denying an application based on a claimant's failure to comply

with prescribed medical care, the ALJ must consider whether the claimant is able to afford the medical care. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

As noted above, the ALJ discounted Plaintiff's subjective complaints of pain, in part, because Plaintiff "failed to follow through on recommendations from his mental health providers." (Tr. 51.) However, the record consistently establishes that Plaintiff was limited financially in his ability to visit a doctor or afford treatment. (Tr. 17, 19, 21, 336, 364, 366, 400, 402, 424, 429.) Further, the ALJ's broad statement neglects to mention that Plaintiff did in fact follow most recommendations, such as attending counseling and therapy, abstaining from alcohol, and seeking treatment. (Tr. 17–22, 350–452, 473–476.) Although the ALJ did not rely solely on Plaintiff's failure to comply with medical treatment as a basis for her decision, it appears to have been a substantial, and unwarranted, reason for discrediting Plaintiff's testimony, especially in light of the ALJ's failure to consider Plaintiff's financial inability to comply with certain medical recommendations.

As discussed above, the ALJ's credibility determination is flawed in several aspects. These flaws, taken together, leave the Court unable to determine whether the ALJ properly considered Plaintiff's medical condition as whole in making her decision. As such, the Court is unable to determine whether the decision is supported by substantial evidence. *See Foote*, 67 F.3d at 1562 ("A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case."); *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) (providing that the ALJ's credibility finding must enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole). As a result, remand is required for additional inquiry into the effect of Plaintiff's reported pain and symptoms on his ability to work.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.
2. The Clerk of the Court is directed to enter judgment consistent with this Order and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on July 19, 2016.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record